ALBERT H. HOUSE vs. ADDIE A. PEACOCK ET AL.

First Judicial District, Hartford, January Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A negotiable note payable "on demand after date" is payable on demand; and this is so although it is made to bear interest from date.

Such obligations are due and payable at once, as between the original parties, and suit can be brought upon them immediately.

A recovery upon a note of that description upon which for nearly twenty years no principal or interest has been paid, nor any acknowledgment or new promise made, is barred by the statute of limitations.

Ordinarily a mortgagee who permits the mortgagor to remain in undisturbed possession of the premises for fifteen years or more after his right to foreclose has accrued, without paying anything on the mortgage debt or in any other way recognizing the continued existence of the mortgage, is guilty of such laches as will prevent his resort to a court of equity to secure a foreclosure of the mortgage.

Letters of an administrator, as such, are not admissible in evidence to establish a new promise whereby to remove the bar of the statute

of limitations in respect to a note of the intestate. Nor does such evidence become admissible merely because the administrator happens to be the sole heir at law.

The case of *Skinner* v. *Hale*, 76 Conn. 227, distinguished.

Argued January 5th—decided January 20th, 1911.

SUIT to foreclose a mortgage of real estate, brought to and tried by the Court of Common Pleas in Hartford County, *Coats, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

*Stewart N. Dunning,* for the appellant (plaintiff).

*Albert C. Bill,* for the appellee (defendant).

PRENTICE, J. The plaintiff, by his complaint dated February 14th, 1910, seeks the foreclosure of a mortgage of real estate, given May 17th, 1872, to secure the payment of a negotiable note for $300, of even date, and payable on demand after date, with interest from date.

A negotiable instrument expressed to be payable "on demand after date" is payable on demand, and it is so payable although it is made to bear interest from date. *Fenno* v. *Gay*, 146 Mass. 118, 15 N. E. 87; *O'Neil* v. *Magner*, 81 Cal. 631, 633, 22 Pac. 876; *Turner* v. *Iron Chief Mining Co.*, 74 Wis. 355, 358, 43 N. W. 149; *Peninsular Savings Bank* v. *Hosie*, 112 Mich. 351, 355, 70 N. W. 890. Such demand obligations are, as between the maker and payee, due and payable immediately, and suit can be brought upon them immediately. *Winsted Savings Bank* v. *New Hartford*, 78 Conn. 319, 328, 62 Atl. 81; *Curtis* v. *Smith*, 75 Conn. 429, 431, 53 Atl. 902; *Trustees of Alms-House Farm* v. *Smith*, 52 Conn. 434, 437; *Lockwood* v. *Crawford*, 18 id. 361, 371. The statute of limitations begins to run against them immediately. *Trustees of Alms-House Farm* v. *Smith*, 52

Conn. 434, 437.  As there has been no payment of interest or principal since June, 1890, and no acknowledgment or new promise during that time, recovery upon the note in suit is, upon the facts found, barred.

In so far as the property is concerned, neither the mortgagee nor any one holding or claiming under him has at any time been in possession.  On the contrary, the mortgagor and his successors in title have been permitted to remain in undisturbed possession from the date of the mortgage until the present time, and no act which can be construed as in recognition of the continued existence of the mortgage was performed by the mortgagor or his successors after the last payment of interest was made in 1890, until this action was brought.

We thus have a situation which is precisely that which was before this court in *Haskell* v. *Bailey*, 22 Conn. 569, and in respect to which it was said that equity would not lend its aid to grant a foreclosure.  The rule there laid down (p. 573) was that where a mortgagor "has been permitted to remain in the undisturbed possession of the mortgaged premises, for a period of more than fifteen years, without the payment of any portion of the debt, or the performance of any act recognizing the continued existence of the mortgage, and until after an action for the recovery of the debt has become barred by the statute of limitations, the mortgagee ought not to be permitted to sue for a foreclosure." This principle was repeated in *Hough* v. *Bailey*, 32 Conn. 288, 289.

It is contended, however, that *Skinner* v. *Hale*, 76 Conn. 227, 56 Atl. 524, lays down a different rule, and plaintiff's counsel relies upon what he contends is the doctrine of that case to support his right to a judgment of foreclosure.

An examination of that case discloses that *Haskell* v. *Bailey* and *Hough* v. *Bailey* are not only cited approv-

ingly, but that their doctrine was reaffirmed in the following language (p. 227): "It is well settled that the right to foreclose, or to redeem, a mortgage, may be lost by the lapse of a period of fifteen years. . . . If, for instance, the mortgagee, after the right to foreclose accrues, suffers the mortgagor to remain in the exclusive possession of the land for fifteen years or more, without any act by the mortgagor recognizing the continued existence of the mortgage, the right to foreclose will ordinarily be barred." This is the doctrine of the prior cases re-asserted, save only for two limitations or qualifications. One of these is that the fifteen-year period should be reckoned from the time the right of foreclosure accrued; the other, that while the rule is one of ordinary application, exceptions to its operation must be recognized where the reason of the rule fails on account of peculiar conditions which may chance to exist.

The reason of the rule is stated to be that our courts proceed upon the theory that a mortgagor's occupancy, under the conditions named, is adverse to the mortgagee, and in denial of his rights (p. 227). The principle underlying the rule is shown to be laches. It is the principle that where one has slept upon his rights for fifteen years a court of equity will not aid him to enforce them (p. 227). The two qualifications of the broadly stated rule of *Haskell* v. *Bailey*, which are reccognized, logically result from these principles, and the opinion, neither in its reasoning nor its conclusion, gives countenance to any other modification of the rule as previously expressed, much less to its overruling. Had there been an intention to overrule it, there certainly would not have been a restatement of it in all of its essential parts, and a reason given in support of it which completely negatives the plaintiff's attempted construction by removing all foundation for it.

The language which plaintiff's counsel relies upon in

support of his contention that the case lays down a principle applicable to the ordinary situation of mortgagor and mortgagee, contrary to that which the court borrowed from *Haskell* v. *Bailey,* was for the most part used for no other purpose than to demonstrate that the case then at bar did not present the ordinary situation calling for the application of the ordinary rule, but a special and exceptional one where the relations of the parties were such as to call for its exception from that rule. The mortgagor was a wife. In the course of time her husband, with whom she was living upon the mortgaged premises, became the owner of the mortgage by assignment. Interest had up to that time been paid. Thereafter during the three or four years which remained of the wife's life, they continued to live together upon the premises, and no interest or principal was paid. Her estate was settled, and the property passed to the defendant, as her sole heir at law. Twelve years after the wife's death proceedings for a foreclosure were brought by the husband. In order to enable the defendant to take advantage of the rule of *Haskell* v. *Bailey* it became necessary to utilize the period of the wife's life subsequent to the husband's acquisition of the mortgage. The question presented was as to the defendant's right to do so, in view of the relation between the husband and wife. It was in view of this situation that the court, after stating and approving the rule recognized by our courts, sought to discover the reason which underlay it. Having announced it in the manner already referred to, it then proceeded to say that that reason failed in a case such as was presented, since, in view of the relation between the parties, it could not be said that the husband was guilty of sleeping upon his rights, since the wife's possession was impliedly in subordination to her husband's rights, and in no sense hostile to them.

Had a single sentence in the opinion under considera-

tion been omitted, there could have been no manner of doubt as to the correctness of this construction of it. That sentence is one which, if it stood alone, would give countenance to the plaintiff's contention. Its statement is borrowed from the law of another jurisdiction, and taken from a case which was one at law, and where the subjects under discussion were ouster and adverse possession. *Skinner* v. *Hale* was like the present in that it was an appeal to the equitable power of the court to grant a foreclosure. The sentence in question is entirely out of harmony with all its context, and with the reasoning of that context. It is apparent that it crept into the opinion through inadvertence and a failure for the moment to observe its inconsistency with what had been said and determined earlier in the opinion, both as to the governing rule and the reasons for it.

Plaintiff's counsel presents a formidable array of authorities from other jurisdictions in support of his contention that his right to foreclose has not been lost. They all gather about the subject of disseizin, and the acquisition of title by prescription. His argument overlooks the fact that this is not an action at law, nor the controlling principle that of adverse possession barring a right of entry. We have no occasion to inquire whether or not the law of these authorities is that of this State as applicable to legal proceedings where title is claimed by prescription. Whether so or not, the rule which has been adopted in this State, at least, as bearing upon the right of a mortgagee to claim the aid of a court of equity to grant him foreclosure of his mortgage, is not thereby affected. In such case, where the powers of equity are invoked, we look to the equitable principle of laches as having material pertinence. The position which has been assumed in this jurisdiction—and it is both a sound and safe one—is that where a mortgagor has under ordinary conditions been permitted to

remain in undisturbed possession for fifteen years after the mortgagee had a right of action, without recognition on the part of the mortgagor of the mortgage relation by a payment on account of the mortgage debt, or other act keeping the debt alive, or recognizing the continued existence of the mortgage, there has been for that period such an indication of the mortgagor's attitude of non-subordination to the rights of the mortgagee as was sufficient to impose upon the latter the duty of taking legal steps to enforce his rights if he, being competent to act, was not to be charged with laches. All of our cases, including *Skinner* v. *Hale,* support this position, and no one of them indicates this more unmistakably than the one named.

The plaintiff attempted to establish a new promise made in 1904 by the aid of certain letters written by the defendant, and signed by her in her capacity as administratrix of the estate of the mortgagor, her father, who died in possession, and whose sole heir at law she was. These letters were properly excluded. *Peck* v. *Botsford,* 7 Conn. 172, 177; *Rhodes* v. *Seymour,* 36 id. 1, 8; *Ensign* v. *Batterson,* 68 id. 298, 306, 36 Atl. 51.

There is no error.

In this opinion the other judges concurred.